Syllabus.

GEORGE HANKINS

v.

THE PEOPLE OF THE STATE OF ILLINOIS.

*Filed at Ottawa June 16, 1883.*

1. STATUTES—*rule of construction—strict construction of penal statutes, or those relating to crimes.* The doctrine of strict construction of statutes imposing penalties and fines has been long established and uniformly applied by this court.

2. Section 1 of the act relating to statutes, providing that "all general provisions, terms, phrases and expressions shall be liberally construed, in order that the true intent and meaning of the legislature may be fully carried into effect," applies to all statutes,—those defining crimes and providing for their punishment, as well as others. It does not require the court to bring cases of a like nature, not named in terms or by clear implication, into a statute, nor yet to give a narrow and restricted meaning to the language employed, but to fairly and reasonably carry out the legislative intent.

3. SAME—*construction as to effect of excluding a particular matter.* As a general rule the exclusion of one subject or thing in a statute is the inclusion of all other things. So the exclusion of the power of the court to impose a fine of less than $100, by implication gives the power to impose a fine for more than that sum.

4. CRIMINAL LAW—*penalty for keeping gaming house—of the limit for the first offence—the statute construed.* Under section 127 of the Criminal Code, providing for the punishment for keeping a gaming house, etc., which provides that for the first offence the offender shall be fined not less than $100, and for the second offence not less than $500, etc., the court is not limited to a fine of $100 on a conviction for the first offence. It seems, however, that such fine might well be regarded as limited in so far that it shall not be for a larger sum than that authorized for a second conviction.

5. SAME—*giving courts the power to determine as to the degree of punishment.* While it is true that the defining of crimes and prescribing the punishment therefor is a legislative function, it does not follow that the legislature is powerless to authorize the courts or juries to exercise a discretion in fixing the amount or degree of punishment, between prescribed limits. Such power has been conferred on all courts administering the criminal law. To deny the courts this power would be to defeat the constitutional provision that penalties shall be proportioned to the offence.

6. SAME—*of special pleas—defences allowable under plea of not guilty.* The 423d section of the Criminal Code has dispensed with all pleas in criminal cases except the plea of not guilty, unless it be pleas in abatement, etc.

Under the plea of not guilty the defendant may avail himself of any meritorious defence he may have. Under it he may show a former conviction or acquittal of the same offence, and hence there is no error in sustaining a demurrer to a plea of a former conviction.

7. SAME—*misdemeanors—jurisdiction of the circuit courts, and of justices of the peace.* Section 381 of the Criminal Code does not confer exclusive jurisdiction on justices of the peace in all cases of misdemeanors where the punishment is by fine only, and the fine does not exceed $200. If such section had so intended, it would have been in violation of section 12 of article 6 of the constitution, which gives circuit courts original jurisdiction of all cases at law and in equity.

8. SAME—*the same act as two offences, and cognizable under two separate jurisdictions.* It has long been the settled law in this State that the legislature may rightfully declare the same act to be two offences, and punishable as such. The fact that a city is empowered to punish the keepers of gaming houses by ordinance, is no bar to a separate prosecution for the same offence under the Criminal Code, by the people. The grant of power to a city to punish for misdemeanors committed within its limits, is not a surrender of the power of the State to also punish for the same offence.

9. SAME—*former decisions.* The principle that the same act may be declared to constitute two offences, and to be cognizable under two separate jurisdictions, is sustained by *Freeland* v. *The People*, 16 Ill. 380, *Severin* v. *The People*, 37 id. 414, *Skidmore* v. *Bricker*, 77 id. 164, and *Wragg* v. *Penn Township*, 94 id. 12, which overrule the doctrine announced in *Berry* v. *The People*, 36 Ill. 223.

WRIT OF ERROR to the Appellate Court for the First District;—heard in that court on writ of error to the Criminal Court of Cook county; the Hon. JOSEPH E. GARY, Judge, presiding.

Mr. EMERY A. STORRS, for the plaintiff in error:

The fine provided by the statute in this class of cases is "not less than $100." Rev. Stat. (Cothran's ed.) Crim. Code, sec. 127, p. 470.

This being a penal statute, it must be strictly construed. *Rapplee* v. *Morgan*, 2 Scam. 551; *Edwards* v. *Hill*, 11 Ill. 23; *Chapman* v. *Wright*, 20 id. 120; *Frees* v. *Tripp*, 70 id. 496; *Albrecht* v. *The People*, 78 id. 510; *Hall* v. *State of Ohio*, 20 Ohio, 7; *United States* v. *Storr*, 1 Hemp. 469; *Ferritt* v. *At-*

*well,* 1 Blatchf. 151; *Bettis, Admr.* v. *Taylor,* 8 Porter, 564; *Andrews* v. *United States,* 2 Story, 202.

The fine provided for such cases as this being "not less than $100," it is a penalty of $100 and no more. *Stinson* v. *Pond,* 2 Curtis' C. C. (Mass.) 502.

The lower court, by imposing a much heavier fine,—$250 and costs,—transcended the limit conferred by the statute. The court therefore erred, and the judgment should be reversed. *Fitzgerald* v. *State,* 4 Wis. 395; *Harvey* v. *State,* 5 id. 529; *Taylor* v. *State,* 35 id. 298.

All such statutes are to receive a strict construction, and can not be extended to embrace cases not named, or to increase the punishment. *United States* v. *Morris,* 13 Pet. 464; *United States* v. *Wiltberger,* 5 Wheat. 76; *United States* v. *Sheldon,* 2 id. 114; Potter's Dwarris on Statutes, 128, 144; *King* v. *Burrill,* 12 Ad. & Ell. 468; *Lamond* v. *Effie,* 3 Q. B. 910; *Everett* v. *Mills,* 4 Scott's N. C. 531; *Green* v. *Wood,* 7 Q. B. 178; *Samuel* v. *Nettleship,* 3 id. 188; "*The Enterprise,*" 1 Paine, 32; *Chase* v. *New York Central R. R. Co.* 26 N. Y. 523; *In re Powers,* 25 Vt. 265; *Water Vliet Turnpike Co.* v. *McKean,* 6 Hill, 616; *Melody* v. *Reab,* 4 Mass. 473; *Rapplee* v. *Morgan,* 2 Scam. 563.

Original jurisdiction in all cases of misdemeanor, when the punishment is by fine only, not exceeding $200, is conferred upon justices of the peace. Rev. Stat. (Cothran's ed.) Crim. Code, sec. 381.

By act of legislature, authority is conferred upon the city of Chicago (sec. 45, art. 5, Municipal Code, p. 21,) "to suppress gaming and gambling houses." Section 1307, article 23, ordinances of the city of Chicago, page 309, provides for just such cases as this.

The defendant having been acquitted under this ordinance, can not be again put upon trial for the same offence. *Berry* v. *People,* 36 Ill. 423; *Houston* v. *Moore,* 1 Wheat. 1.

Mr. LUTHER LAFLIN MILLS, State's Attorney, and Mr. W. E. LEFFINGWELL, for the People :

The statute has changed the common law rule that a penal statute must be strictly construed. Rev. Stat. chap. 131, sec. 1. See, also, *Robbins* v. *People*, 95 Ill. 176 ; *Stevens* v. *People*, 67 id. 588.

All penalties shall be proportioned to the nature of the offence. Const. 1870, art. 1, sec. 11.

Circuit courts shall have original jurisdiction of all causes at law and in equity. Const. 1870, art. 6, sec. 12.

The legislature may create two or more offences, which may be committed by a single act, each of which is punishable by itself. *Wragg et al.* v. *Penn Township*, 94 Ill. 23.

Mr. JUSTICE WALKER delivered the opinion of the Court :

The indictment in this case was for keeping a gaming house, contrary to the provisions of the statute. Section 127 of the Criminal Code is as follows : "Whoever keeps a gaming house, or in any building, booth, yard, garden, boat or float, by him or his agent used and occupied, procures, or permits any persons to frequent or come together to play for money or other valuable thing at any game, or keeps, or suffers to be kept, any tables or other apparatus for the purpose of playing at any game or sport for money or other valuable thing, or knowingly rents such place for such purpose, shall, on conviction, for the first offence, be fined not less than $100, and for the second offence be fined not less than $500, and be confined in the county jail not less than six months, and for the third offence shall be fined not less than $500 and be imprisoned in the penitentiary not less than one year and not more than five years." On being tried in the Criminal Court of Cook county, plaintiff in error was convicted, and fined $250. The case was removed to the Appellate Court for the First District, and the judgment was affirmed, and the record is brought to this court on error.

Various objections are urged. It is first insisted, that under the statute the Criminal Court exceeded its jurisdiction by imposing a fine of more than $100. It is claimed that sum is the amount of the fine fixed by the statute, and the court is powerless to exceed that amount on such a conviction; ·that under the canons of construction the section must be read as though it said $100, and no more; that such statutes must be strictly construed, and therefore no greater amount than that sum could be imposed. The doctrine of strict construction in cases of penalties has been long and uniformly established in this court. *Wilson* v. *Ohio and Mississippi R. R. Co.* 64 Ill. 542, *Edwards* v. *Hill*, 11 id. 22, *Erlinger* v. *Boneau*, 51 id. 94, *Chicago and Alton R. R. Co.* v. *The People*, 67 id. 11, *Chicago and Northwestern R. R. Co.* v. *Stanbro*, 87 id. 195, *Raplee* v. *Morgan*, 2 Scam. 561, *Chapman* v. *Wright*, 20 id. 120, *Freese* v. *Tripp*, 70 id. 496, *Albrecht* v. *The People*, 78 id. 510, and many other cases not necessary to be referred to, as this is the doctrine of this court, independent of the reported cases of other courts. The doctrine is so elementary and well recognized that it does not need other authorities for its support.

This court has, in two cases heretofore before us for decision, affirmed judgments for fines of more than $100 on convictions under this section. (See *Robbins* v. *The People*, 95 Ill. 175, and *Stevens* v. *The People*, 67 id. 587.) It is true in neither of those cases was the question under consideration presented or discussed, but they are referred to as showing this question is not so obvious as to have attracted the attention of counsel arguing those cases. Although the rule of strict construction obtains in this class of cases, it must not be so strict as to defeat the intention of the legislature. This is forbidden by the first section of the chapter entitled "Statutes." It provides that "all general provisions, terms, phrases and expressions shall be liberally construed, in order that the true intent and meaning of the legislature

may be fully carried into effect." This rule of construction
is, in express terms, made applicable to all laws then or since
in force. This provision requires a liberal construction to
effectuate the purpose of the legislature, but it does not
require the court to bring cases of a like nature, not named
in terms or by clear implication, into the statute, nor to give
a narrow and restricted meaning to the language employed,
but to fairly and reasonably carry out the intention of the
legislature, as gathered from the entire provision or enact-
ment.

We are, then, required to determine, from the language of
the section, whether it was the purpose of the legislature to
limit the fine for a first offence to no more than $100. As
a general rule, the exclusion of one subject or thing is the
inclusion of all other things. When the legislature, in this
case, excluded the power of the court to impose a fine of less
than $100, it, by implication, authorized the exercise of power
to impose a fine for more than that sum. It fixed the mini-
mum, but fixed no maximum. Had there been an intention
to fix that sum as the limit, both as a minimum and maxi-
mum, it appears almost incredible that no language was
employed to manifest the intention, especially so, when, in
the same section, in fixing the penalty for a repetition of the
same offence by confinement in the penitentiary, a minimum
and a maximum were prescribed. It therefore appears that
the fixing of a penalty for the first offence, in omitting to
limit it to not more than $100, was not from inadvertence or
mistake, but was intentional, and if so, it must have been
designed to authorize a fine of more than $100 for the first
offence. It would, however, not be strained construction to
say that for the first offence there is a limit. The legislature
evidently regarded a second offence as graver than the first,
because the minimum fine for it is fixed at $500, and im-
prisonment for not less than six months in the county jail.
It is, then, reasonable to infer that it was not intended the

fine for a first offence should be more than that of the second and greater offence. It would be unreasonable to suppose the legislature designed to confer power on the court to punish more severely for the lesser than it might for a greater offence.

On this question of construction of the section under consideration we receive but little aid from adjudged cases. In the case of *Drake* v. *The State*, 5 Texas App. 649, a defendant was indicted and tried for murder, and the jury found him guilty of murder in the second degree, and fixed his term of service in the penitentiary for life. The statute provided that in such cases the person so convicted should be confined in the penitentiary not less than five years, without fixing a maximum limit. In the opinion of the court affirming the judgment it is said, it was urged that the punishment was too severe, but the court did not allow the objection. In the case of *Childs* v. *The State*, 2 Texas App. 36, a woman was convicted for murder in the second degree, and sentenced, on the verdict of the jury, to confinement in the penitentiary for the period of sixty years, and the judgment was affirmed. Thus it seems that the power to extend punishment beyond and greatly above the minimum term fixed by the statute seemed so obvious to both counsel and court that no question was raised or discussed.

The case of *Stinson* v. *Pond*, 2 Curtis' C. C. 502, is referred to as supporting the rule of construction contended for by plaintiff in error. That was an action of debt, to recover a penalty under an act of Congress, given for marking the word "patented" on unpatented manufactured articles. The statute prohibited such marking, under a penalty of not less than $100. Thus, it is seen, in that respect that statute was similar to the Texas and our statute. Judge Curtis, in construing the statute, held that the penalty was limited to $100, and a recovery could not exceed that sum. We are unable to concur with his conclusion, because it seems to us

that under our act such was not the intention of the legislature.    When, under our act, the fine is fixed above the minimum, it is subject to be reviewed.

It is also urged, the power to define crime, and to prescribe the penalty for its punishment, is a legal and not a judicial function, and the court, therefore, has no power to impose a fine for a larger sum than that specified as the lowest amount by the statute.    It is, no doubt, a legislative function to define crimes and misdemeanors, and prescribe the penalties, and it is equally true that courts can impose no punishment unless authorized in terms or by clear implication; but it does not follow that the legislature is powerless to authorize the court or the jury to exercise discretion, between prescribed limits.    Such power has been conferred on all courts in administering the criminal law wherever the common law has obtained, and doubtless under all other systems, both ancient and modern.    If such a discretion were not allowed, it would be impossible to even approximate justice.    It would be to punish all offences falling under the same definition with precisely the same penalty, regardless of the aggravating or extenuating circumstances of the case.    It would defeat the constitutional provision that penalties shall be proportioned to the offence.    Here the penalty was fixed by the General Assembly, between limits. In punishment short of the death penalty there is given a wide range between limits.    Here is an offence against the public of most ruinous consequences, but it admits of degrees, and offenders should be punished according to the degree of the offence.    In one case, a man, we will suppose, keeps a small gaming house, where occasionally a few persons meet and bet small sums.    On the other hand, another person keeps a palatial concern, with all the allurements to attract persons to resort to it for the purpose of gaming, and to which large numbers resort, and daily and nightly bet and lose their thousands, and its victims of ruin are hundreds

for the one at the smaller concern. Shall both be punished by precisely the same penalty? Justice forbids it; and it is too incredible for belief that the legislature ever so intended, and we would defeat the purposes of the formation of government if we should so hold. The legislature may, constitutionally, confer the power on the courts or juries to proportion the punishment according to the circumstances in each case, within limits that may be imposed by statute.

It is likewise insisted that the court erred in sustaining the demurrer to the plea of *autrefois convict.* Although that plea and *autrefois acquit* have been used in our practice, they are useless under the provisions of our statute, and the question has never been presented whether these defences may be made under the general issue. The 432d section of the Criminal Code provides, that, "upon the arraignment of a prisoner, it shall be sufficient, without complying with any other form, to declare orally, by himself or his counsel, that he is not guilty." This provision in terms dispenses with all other pleas and forms, and clearly permits all meritorious defences to be made under the plea of not guilty. The statute has dispensed with all others than that plea, unless it be pleas in abatement, etc. It renders unnecessary the plea of former conviction, and allows that defence to be made under the plea of not guilty, and being unnecessary it is not error to sustain a demurrer to such a plea or strike it from the files. Without the plea the same evidence in defence may be given that could be if it was pleaded. By sustaining a demurrer to such a plea the accused can sustain no wrong, as he may still introduce any evidence he might under the plea. *Curtiss* v. *Martin,* 20 Ill. 557, *City of Quincy* v. *Warfield,* 25 id. 317, *Manny* v. *Rixford,* 44 id. 129, *Wiggins Ferry Co.* v. *Blakeman,* 54 id. 201, and *McCord* v. *Mechanics' National Bank,* 84 id. 49, sustain this doctrine. Defendant, had he chosen to do so, could have introduced evidence of a former conviction of the same offence then being tried, if he had such

evidence, and could have been acquitted. Had he offered such evidence, and it had been rejected, then there would have been error.

It is urged that the circuit court did not have jurisdiction, because the section under which plaintiff in error was tried is repugnant to section 381 of the Criminal Code. It is this: "Original jurisdiction in all cases of misdemeanors, where the punishment is by fine only, and the fine does not exceed $200, is conferred upon justices of the peace." There are at least two conclusive answers to this objection. First, there is no language employed to indicate that exclusive jurisdiction was intended to be conferred. But had there been such an intention, it would have been violative of section 12, of article 6, of the constitution. It has vested the circuit courts of the State with original jurisdiction of all causes in law and equity, and we find no other provision authorizing them to be divested of such jurisdiction. Other tribunals may be vested with concurrent, but not exclusive, jurisdiction, unless authorized by that instrument. (*Myers* v. *The People*, 67 Ill. 503.) This was a cause at law, and the legislature had no power, if it had so desired, to deprive the circuit court of original jurisdiction in this class of cases. Again, we have seen the penalty under this section is not limited to $200.

It is next urged, that the legislature having conferred power on the city of Chicago to suppress gaming houses, and it having assumed the power, and passed ordinances for the purpose, the court had no jurisdiction to try the case; that when a proceeding was had under the city ordinance, the judgment for the breach of the ordinance was an end of the case, and there was no power to prosecute under the general law for this offence. That the legislature may rightfully declare the same act to be two offences, and to be punished as such, has long been the settled law of this State. In the case of *Freeland* v. *The People*, 16 Ill. 380, it was held that

where one was tried and convicted for an assault and battery, when indicted with others for a riot, in committing the act for which he had been convicted, that conviction was no bar to the prosecution for the riot, as the act committed included two offences. In *Severin* v. *The People,* 37 Ill. 414, it was held that for an assault with a deadly weapon the offender might be convicted of an assault and battery, and when indicted for an assault with a deadly weapon he could not plead the conviction for the assault and battery in bar of the indictment, because the same act contained both offences. In *Skidmore* v. *Bricker,* 77 Ill. 164, it was held that the prosecution and fining a part of the persons indicted for an assault and battery, is no bar to a prosecution for riot, growing out of the same transaction. In *Wragg* v. *Penn Township,* 94 Ill. 12, this court held that the legislature had power to give two actions for the same act in obstructing a road,—one for a penalty to the township, to be expended on the roads, and the other by indictment,—that the act was thus made two offences, one against the township, and the other against the people, and that both could recover by different proceedings. Thus it is seen the doctrine is established in this jurisdiction. These are subsequent cases, and overrule the doctrine of *Berry* v. *The People,* 36 Ill. 223. The delegation of power to the city to suppress gaming houses, and its exercise, is, at most, concurrent, to a limited extent. No one will contend that the legislature intended to, or did, confer the power on the city to punish the third offence with imprisonment in the penitentiary. The limit of the fine a city or village can impose under the general act of Incorporation is $200, and the imprisonment not more than six months, hence it can not be inferred, under any circumstances, the city has jurisdiction to impose the penalty for the second and third offences prescribed by this section. When jurisdiction was conferred on the city, it was to enable it to define and punish the keeping a gaming house as an offence against the city

and its inhabitants, and not to yield the power of the State to the municipality.

The judgment of the Appellate Court is affirmed.

*Judgment affirmed.*

Separate opinion by Mr. JUSTICE SCHOLFIELD :

I concur in affirming this judgment, but I do not concur in what is said in the opinion of Mr. Justice WALKER on behalf of a majority of the court, in regard to the plea of *autrefois convict.* At common law there were four kinds of special pleas in *bar* which go to the merits of the indictment, and give a reason why the prisoner ought not to answer it at all, nor put himself upon his trial for the crime alleged. They were, a former acquittal, a former conviction, a former attainder, and a pardon. (4 Blackstone's Com. (Sharswood's ed.) 334, *335.) And in cases of felony the rule was, that he who pleaded these pleas should also plead over *not* guilty to the felony, for if the pleas were adjudged against him, he should then be tried upon the issue of *not guilty.* (2 Hale's Pleas of the Crown, 254, *255 ; 4 Blackstone's Com. (Sharswood's ed.) 337, *338.) And former acquittal or conviction must be pleaded, and evidence of either was not admissible under the general issue. Archbold's Criminal Pleading, (13th ed.) 117, *seq.; State* v. *Barnes,* 32 Maine, 534 ; *Commonwealth* v. *Merrill,* 8 Allen, 545.

The question has not heretofore been directly passed upon by this court whether evidence of former acquittal or former conviction may be given in evidence under the general issue, but there is reason why it should not be. As has been seen, these pleas precede, in point of time, the plea of not guilty, and seek to avoid answering the indictment at all, and, if maintained, dispense with any answer to it. *Not guilty* puts in issue simply the allegations in the indictment, and under it the question is whether the defendant is guilty as charged. It is, therefore, held, both issues can not rightly be submitted

to the jury at the same time; but on this point there is not entire uniformity in the practice in the different States. In all cases, however, the issue on *autrefois convict* or *autrefois acquit* must be first disposed of, for until it is disposed of it can not be known whether the defendant is required to make answer to the indictment. Wharton says (1 Crim. Law, 7th ed. sec. 530 a): "And in this country, in cases where not guilty has been pleaded simultaneously with *autrefois acquit,* the same course," alluding to the English practice, "has been followed, and the plea of not guilty stricken off until the special plea is disposed of. In such case, after determining the special plea against the defendant, the present practice in the United States is to enter simply a judgment of *respondeat ouster* in all cases in which the special plea is not equivalent to the general issue. This, which is technically the correct practice, is not, however, always pursued. A short cut is often taken to the same result by directing, when special pleas and the general issue are filed simultaneously, or are found together on the record before trial, that the special pleas should be tried first, and if they are found against the defendant, then the general issue. But under any circumstances it is error to try the special pleas and the general issue simultaneously. The special plea must always be disposed of before the general issue is tried." See, also, 1 Bishop's Crim. Procedure, secs. 435–338; *Commonwealth v. Merrill, supra.*

With all due respect for my brethren, I can not think the section of the statute referred to in the opinion of the majority of the court (Const. sec. 4, div. 2, Rev. Stat. 1874, p. 410,) has the slightest reference to special pleas in bar, which go, not to the question of the guilt or innocence of the defendant under the indictment, but simply to whether he is bound to make answer to the indictment. This section is but a substantial reënactment of the common law rule. The plea of not guilty there was interposed *ore tenus,* and taken

down by the clerk, and this constituted the issue between the
Crown and the prisoner, and. under it the prosecution were
not only required to prove every fact essential to establish
the guilt of the prisoner, but the jury were required to take
notice of any defensive matter, and give their verdict accord-
ingly.   (4 Blackstone's Com. (Sharswood's ed.) 337, *338;
1 Archbold's Crim. Practice and Pleading, (6th ed.) 109,
*110; 1 Wharton's Crim. Law, (7th ed.) sec. 530; 1 Bishop's
Crim. Procedure, sec. 466.)   By section 8 of the same divi-
sion of the Criminal Code, it is expressly provided that "all
trials for criminal offences shall be conducted according to
the course of the common law, except when this act points
out a different mode."   And so, it would follow, the act not
pointing out that special pleas in bar are unnecessary, or that
the defences which were thereby interposed at common law
are now to be interposed in a different way, *autrefois acquit*
and *autrefois convict* must still be specially pleaded.

   But, again, the phraseology of the section quoted in the
opinion of the majority of the court is a literal transcript of
section 171 of the Criminal Code of 1833.   (See Rev. Stat.
1833, p. 212.)   And the decisions of this court, therefore,
made since 1833, were all made under, and, we must assume,
with knowledge of and with reference to, the law as laid down
in that section.

   In *Gerard* v. *The People*, 3 Scam. 362, (decided in 1842,)
there was a plea of *autrefois acquit*.   It was demurred to, and
the demurrer was sustained by the circuit court.   The only
question discussed or passed upon in this court was, whether
the demurrer was properly sustained to the plea.   This court
affirmed the judgment of the circuit court, upon the ground
that the record pleaded showed that the judgment had been
arrested.

   In *Durham* v. *The People*, 4 Scam. 172, demurrer was sus-
tained by the circuit court to a plea of *autrefois acquit*.   The
only question there discussed or passed upon in this court was,

41—106 ILL.

whether the demurrer to the plea was properly sustained. This court reversed the judgment of the circuit court, upon the ground that the plea presented a good defence, and that the circuit court therefore erred in sustaining a demurrer to it.

In *McQuoid* v. *The People*, 3 Gilm. 76, the sole question for this court was, whether the circuit court erred in sustaining a demurrer to a plea of *autrefois acquit*, and the judgment was here affirmed, upon the ground that the plea was insufficient, in not showing that the offences in the two indictments constituted one and the same identical offence.

In *Freeland* v. *The People*, 16 Ill. 380, the sole question was, whether the circuit court erred in sustaining a demurrer to a plea of *autrefois convict*. In that case the court entered into an elaborate examination of common law decisions, English and American, and, resting its decision purely on the common law doctrine applicable to special pleas in bar in criminal cases, affirmed the judgment of the circuit court, on the ground that the allegations were not sufficient to make a good plea of *autrefois convict*.

In *Phillips* v. *The People*, 55 Ill. 430, it was held within the discretion of the trial court to allow or refuse the plea of not guilty to be withdrawn, and a special plea, setting up a former conviction in a foreign State, to be filed.

In *Bedee* v. *The People*, 73 Ill. 320, there was a plea of *autrefois convict*, to which it was replied the former judgment was arrested. A demurrer to that replication was overruled, and that ruling we affirmed.

In none of these cases was it intimated the matter of the special plea could be given in evidence under the general issue. In all of them the practice pursued, and the reasonings in the opinions of the court, are inconsistent with that idea. And in *Durham* v. *The People*, the ruling seems to me expressly and diametrically in opposition to what it is here. Even if it be conceded that this defence may be given in

evidence under the general issue, this unbroken current of decisions, covering a period of near forty years, certainly firmly establishes the practice that the defence may be presented, and its sufficiency tested, by special plea.  Parties indicted could not anticipate a change in this practice, and could not, therefore, be expected to conform to such change by offering evidence to prove a defence held inadmissible on a demurrer to a special plea.  They are justified in assuming, when the circuit court has sustained a demurrer to their pleas, that this court will, on error, reëxamine the questions raised by such demurrers.  In the present case, however, I am of opinion the plea was defective, and the demurrer was properly sustained to it by the circuit court.  I do not think that it is sufficiently shown by the record recited, and by averments in the plea, that both indictments are for one and the same identical offence, which is indispensable in such a plea. (*McQuoid* v. *The People, supra.*)  All the authorities are to the effect that in such a plea the record of acquittal or conviction must be recited.  (2 Hale's Pleas of the Crown, 254, 255; 1 Bishop's Crim. Procedure, sec. 580.)  And the first or former acquittal or conviction must have been regular. (*Commonwealth* v. *Peters,* 12 Metc. 387; *State* v. *Odell,* 4 Blackf. 156; *State* v. *Payne,* 4 Mo. 376; *Dunn* v. *State,* 2 Pike, 229; *Rector* v. *State,* 1 English, 187; *Rex* v. *Bowman,* 6 Carr. & Payne, 337.)  It must show a conviction by verdict. 2 Hale's Pleas of the Crown, 246.

In *McKinney* v. *The People,* 2 Gilm. 540, this court said: "In a criminal case, after the caption stating the time and place of holding the court, the record should consist of the indictment, properly indorsed, as found by the grand jury; the arraignment of the accused, his plea, the impanelling of the traverse jury, their verdict, and the judgment of the court." It is the *verdict* of acquittal or conviction that forms a bar to a subsequent prosecution for the same offence, although no judgment may have been entered upon it.  (*Bren-*

*nan et al.* v. *The People*, 15 Ill. 517.) The record of conviction here set out shows no impanelling of a jury, and no verdict by a jury. There can be no inference that there is any other record, because it was the duty of the pleader to set out the record, and this he assumes to do. The constitution and the statute require that the guilt or the innocence of the accused must be determined by the verdict of a jury, and a court assuming, against the will of the prisoner, to convict, without the intervention of a traverse jury, would be acting without jurisdiction, and its acts would be void. *Work* v. *The State*, 1 Ohio St. 296 ; *Cancemi* v. *The People*, 18 N. Y. 128.

The defendant may undoubtedly waive the right to a trial by jury. He may plead guilty, or he may, at least in misdemeanors, waive a jury, and let the issues be tried by the court. But this is exceptional, and the record should show the waiver. The record here shows no such waiver, and there can be no presumption of the existence of that which should, but does not, appear of record. The plea fails, therefore, to show a valid conviction.

Mr. JUSTICE MULKEY: I concur with my brother SCHOLFIELD.

Mr. JUSTICE DICKEY, dissenting:

I think the plea of former conviction was good, and it was error to adjudge it bad on demurrer, and that, for that error, this conviction ought to be reversed. The plea shows the presenting by the grand jury of the former indictment as a true bill, in open court, but fails to show that it was so indorsed by the foreman. The plea shows, in the former proceeding, that defendant pleaded not guilty to the indictment, and was tried, found guilty, and sentenced by the court, but fails to show the trial was by jury. There were defects and irregularities in the former proceeding which

Mr. Justice DICKEY, dissenting.

might be sufficient to arrest the judgment, on motion, or to reverse the same on error, but do not render the judgment of conviction void. The plea shows a conviction by a court having jurisdiction, and shows the identity of that charge with that for which he was here charged. This was a complete bar until reversed for error,—and, in my opinion, was a bar.

I am not prepared to concur in the position that a former conviction may lawfully be given in evidence under the plea of not guilty. Our statute says, an oral plea of not guilty shall be sufficient. This was sufficient at common law, but under such plea former conviction could not be proven. However this may be, the court having adjudged, on demurrer to the special plea, that the former conviction was not a bar to another prosecution for the same offence, we have no warrant for saying, in this case, the facts alleged *might* have been proven under the plea of not guilty. This certainly could not have been done unless the trial court changed its views as to the law. The court having once decided that the facts alleged in the plea did not make a good defence, there was no need that defendant should, on the trial, demand of the court to decide that question again, in order to avail himself here of the error in pronouncing the plea bad. The contrary doctrine has never been applied in a criminal case, and I think it unsound in any case. Had proof of the former conviction been offered and admitted upon the trial, we might say the former error did the accused no harm. That would have shown the court had changed its views, and had given the accused the same benefit he could have had by a trial of the truth of the special plea. But the record in this case affirmatively shows that no such proof was offered or given, and the truth of the allegation of the former conviction for the very same offence has, in fact, never been tried, and its truth stands confessed upon the record.