(No. 19739.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* PETER PEPLOS, Plaintiff in Error.

*Opinion filed June 20, 1930.*

JOHN E. GOEMBEL, (HALL & DUSHER, of counsel,) for plaintiff in error.

OSCAR E. CARLSTROM, Attorney General, WILLIAM D. KNIGHT, State's Attorney, and ALFRED B. LOUISON, for the People.

Mr. COMMISSIONER EDMUNDS reported this opinion:

Plaintiff in error, Peter Peplos, was indicted by the grand jury of Winnebago county for the crime of selling intoxicating liquor after having been previously convicted of the same offense. The trial resulted in a verdict of guilty. Motions for a new trial and in arrest of judgment were overruled and plaintiff in error was sentenced to im-

prisonment in the penitentiary for not less than one nor more than two years and to pay a fine of $1500 and costs. He prosecutes this writ of error for review of the record, setting forth as ground for reversal of the judgment that he was twice placed in jeopardy for the offense charged.

The indictment under which conviction was had was returned February 8, 1929. On February 28, 1929, a jury was impaneled and sworn to try the cause and the trial commenced. After the noon recess the State's attorney made a motion to withdraw a juror and continue the cause. This motion was allowed, a juror was withdrawn, the remainder of the panel were excused and the cause continued to March 4, 1929. Prior to the latter date plaintiff in error moved that he be discharged from further attendance upon the court because he had once been placed in jeopardy on the charge contained in the indictment. This motion was overruled. When the case was called for trial on the latter date plaintiff in error filed a plea of former jeopardy. To this plea a demurrer was sustained, and the cause went to trial upon the indictment and plea of not guilty before a jury no member of which was a member of the jury sworn to try plaintiff in error on February 28. Under the plea of not guilty plaintiff in error offered in evidence a transcript of record showing the proceedings of February 28 in the same case. An objection to this offer was sustained.

No error was committed in sustaining the demurrer to the plea of former jeopardy, because evidence establishing such defense was properly admissible under the plea of not guilty. If the evidence offered established such defense, refusal to admit it was reversible error. *Hankins* v. *People,* 106 Ill. 628.

The transcript which plaintiff in error sought to introduce contains copies of the proceedings of the circuit court of Winnebago county showing that the January term of said court duly convened on January 14, 1929; that on February 8, 1929, court convened pursuant to adjournment; that

on that day the sheriff of Winnebago county returned into court a venire recalling the grand jury; that certain named individuals were served with summons to appear as grand jurors and answered to the call, with the exception of three; that the court ordered the sheriff to call three additional grand jurors necessary to complete the panel; that thereupon the sheriff presented the names of three men, including Richard Miller, to serve as grand jurors; that the court appointed J. C. Snow foreman of the grand jury and all were duly sworn by the clerk of the court; that thereupon "the said grand jurors are given into charge of Harry A. Rose and Louis Manson, specially sworn for such purpose, and by order of the court retire to deliberate on such business as may come before them;" that "now comes the said grand jury into open court, and being again called by the clerk of this court all appear and answer to their names, and said grand jury presents into open court ten (10) true bills of indictment by them found, signed by the foreman and endorsed as follows, to-wit: * * * 6287—The People of the State of Illinois *vs.* Peter Peplos.—Indictment for selling liquor (2d offense)—A true bill.—J. C. Snow, foreman of the grand jury;" that the ten true bills were ordered filed and docketed; that capiases were ordered for all defendants; that the grand jury was discharged for the term unless recalled by order of court; that on February 27, 1929, a special panel of twenty persons was ordered from which a jury might be selected to try the case of *People* v. *Peplos;* that on February 28, 1929, an additional special panel of ten persons was ordered; that R. C. Miller, among others, was brought in as one of this latter panel; that on February 28, 1929, a jury was impaneled with Miller as a member thereof, and that on that day the State called a witness who identified certain criminal records of the county court of Winnebago county and produced a *mittimus* for commitment of plaintiff in error, issued on a judgment of conviction in that court. The transcript further shows that

when court convened after the noon recess on February 28, the trial judge, not in the presence of the jury, made a statement, in the course of which he said that juror Miller had volunteered the information that perhaps he had made an incorrect answer to questions propounded by counsel for plaintiff in error, and that he had been on the grand jury that found the indictment but was not present at the time the indictment was found and heard none of the testimony pertaining to it. The judge then asked whether counsel for either the State or plaintiff in error desired to question Miller any further, and finished with the query, "Do either of you want anything or don't you? Do you want to go ahead?" Counsel for plaintiff in error replied, "I am not saying anything." Counsel for the State indicated a desire to ask Miller further questions, and, over objection of counsel for plaintiff in error, permission was granted to do so. Miller was brought into the court room and in the absence of the other jurors stated that when he was examined he had been asked if he had served on the grand jury, and he said he had served half a day during the winter—he thought in January; that he was asked when he was examined if he had heard any evidence of the case against plaintiff in error, and he said he had not, and that he was on the panel of the grand jury that indicted plaintiff in error but did not hear any of the evidence against him and did not vote on the indictment. After the State concluded this further examination of Miller the court asked, "Do you care to go ahead?" to which counsel for plaintiff in error replied, "I make no statement on this at all." The transcript shows finally that the State, over the objection of counsel for plaintiff in error, moved to withdraw a juror on the ground that Miller had served on the grand jury which found the indictment against plaintiff in error and that the motion was on that ground allowed.

It has been stated as an ancient maxim of the common law that no person shall be subject for the same offense to

be twice put in jeopardy of life or limb. (4 Blackstone's Com. 335; *People* v. *Goodwin,* 18 Johns. 187; *Commonwealth* v. *Roby,* 12 Pick. 501.) Language expressive of this principle was made part of the fundamental law of the United States (Const. of United States, amendment 5,) and is found in most of the constitutions of the several States, including Illinois. (Const. of Illinois, art. 2, sec. 10.)

The question of double jeopardy was presented to this court in *Dreyer* v. *People,* 188 Ill. 40, where it was held that the discharge of the jury by the court without the consent of the accused, where they have failed to agree upon a verdict after being out a reasonable time and it does not appear probable that they will agree, does not bar a second trial for the same offense upon the ground of former jeopardy. In the opinion recognition was given to the rule of the common law that when a jury retires it should be kept together until a verdict is reached and returned into court, but the court went on to add: "But it needs no reasoning to show that this theory of the law cannot always be carried into effect without defeating justice, and it has long been the settled law that without the consent of the prisoner the court has the power to discharge a jury before verdict 'from necessity' and to hold him for another trial. On this proposition the courts agree." The court also referred to the oft-quoted statement of Justice Story in the opinion delivered by him in *United States* v. *Perez,* 9 Wheat. 679, where it was said: "We think that in all cases of this nature the law has invested courts of justice with the authority to discharge a jury from giving any verdict, whenever, if in their opinion, taking all the circumstances into consideration, there is a manifest necessity for the act or the ends of public justice would otherwise be defeated." In *O'Donnell* v. *People,* 224 Ill. 218, this court said that even after the jury has been sworn, the trial completed and the cause submitted to the jury, if for good cause, such as failure to agree, sickness of a juror or the expiration of the

term of court, the judge should discharge the jury without a verdict, the prisoner could not plead a former jeopardy to a second trial for such offense, and this statement was re-iterated in *People* v. *Castree*, 311 Ill. 392. We conclude, therefore, that the present case is to be settled by determin-ing whether or not, in view of all the circumstances, the trial judge must be said to have ruled arbitrarily and to have abused the discretion which, under the above authorities, he must be held to have had, to allow the withdrawal of a juror at the first trial.

In arguing that the trial judge did abuse his discretion, counsel for plaintiff in error contend that the jury was not discharged from "necessity;" that Miller was a qualified juror; that from the transcript offered it appears that even if Miller had been challenged for cause the court would have been justified in refusing to sustain the challenge, and that, consequently, allowing the motion to withdraw a juror and continuing the cause was an arbitrary action, which can not be upheld. Counsel for the State take direct issue with these contentions.

In the case of *People* v. *Mooney*, 303 Ill. 469, it was held that where a juror during his examination states that he has not heard of the case aside from newspaper articles and that he has formed no opinion, but the defendant dis-covers, after the verdict, that said juror was clerk of the grand jury which returned the indictment and as clerk took minutes during the hearing of the charge against the de-fendant, a new trial should be awarded. In answering the contention that the juror was not disqualified because he made an affidavit to the effect that he had forgotten he was on the grand jury, that he had no recollection of the case and that his mind was free from opinion, the court quoted from the case of *United States* v. *Christensen,* 7 Utah, 26, where it was said that the presumption of law is that a member of a grand jury participated in the finding of the indictment and formed an opinion as to guilt or in-

nocence of the defendant. The court referred also to various authorities from other jurisdictions, and called attention to the common law rule that a grand juror was subject to a fine if he did not make known, if called as a juror to try the case, that he had acted as a member of the grand jury returning an indictment against the accused.

In the case of *People* v. *Thompson,* 155 U. S. 271, the record disclosed that while the trial was proceeding, a jury having been sworn and a witness examined, the fact that one of the jurors was disqualified, in the language of the court, "by having been a member of the grand jury that found the indictment," became known to the court. Thereupon "the court, without the consent of the defendant, and over exception, discharged the jury and directed that another jury should be called." It was held that there was no double jeopardy, the court citing *United States* v. *Perez, supra,* and other cases, and saying: "Those cases clearly establish the law of this court that courts of justice are invested with the authority to discharge a jury from giving any verdict whenever in their opinion, taking all the circumstances into consideration, there is a manifest necessity for the act or the ends of public justice would otherwise be defeated, and to order a trial by another jury."

Even apart from the language and holdings of the *Mooney* and *Thompson cases, supra,* any court would properly feel called upon, for the reasons upon which these decisions were based, to sustain objection to a prospective juror who had been a member of the grand jury which found the indictment. These cases stand as a virtual command to sustain such an objection. Counsel for plaintiff in error insist, however, that these cases are not applicable to the situation presented here, and that there is, as a matter of law, a sharp line of distinction between the *Mooney case* and the situation which arose in the present one. In support of this argument counsel point to the fact that whereas the juror in the present case stated that he did not participate in find-

34

ing the indictment and did not hear the evidence, in the *Mooney case* it appears clear that the juror, in spite of his affidavit that he had no recollection of the matter, did hear the evidence and was present when the indictment was voted. The record in the *Thompson case* does not affirmatively disclose whether the juror there involved did or did not hear the evidence or did or did not vote to indict. The distinction insisted upon by counsel cannot be recognized. Miller was not a competent juror and the ruling of the trial judge in allowing the motion to withdraw a juror was proper.

The judgment of the circuit court of Winnebago county is affirmed.

Per CURIAM: The foregoing opinion reported by Mr. Commissioner Edmunds is hereby adopted as the opinion of the court, and judgment is entered in accordance therewith.

*Judgment affirmed.*