(No. 20623.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* MIKE SIMOS *et al.* Plaintiffs in Error.

*Opinion filed October 23, 1931.*

WM. SCOTT STEWART, for plaintiffs in error.

OSCAR E. CARLSTROM, Attorney General, JOHN A. SWANSON, State's Attorney, and J. J. NEIGER, (EDWARD E. WILSON, HENRY T. CHACE, JR., OTHO S. FASIG, and CHARLES A. BELLOWS, of counsel,) for the People.

Mr. CHIEF JUSTICE STONE delivered the opinion of the court:

Plaintiffs in error were convicted in the criminal court of Cook county on a charge of conspiracy to suborn perjury by causing one Dorothy Fletcher to testify falsely to a material issue in a personal injury suit instituted by plaintiff in error Mike Simos against the Chicago Rapid Transit Company in the circuit court of Cook county. The jury fixed the punishment of Anthony Anton at imprisonment in the county jail for a term of one year, that of Mike

Simos at imprisonment in the county jail for a term of nine months and that of Caloedas at imprisonment in the penitentiary. Judgment was entered on these verdicts and was affirmed by the Appellate Court. The cause is here on writ of error.

Three errors are assigned in this court: (1) The court erred in refusing to permit proof concerning former jeopardy of plaintiffs in error; (2) crimes other than those charged in the indictment were proved or insinuated; (3) insufficiency of the evidence to support the verdict.

A trial was first begun before Hon. Thomas Taylor, judge of the criminal court of Cook county, on March 4, 1929. After the jury was selected and sworn and some evidence taken, the court, by reason of matters occurring in the court room at that time, withdrew a juror and declared a mis-trial. The jury was discharged and the case was later transferred to Hon. John J. Sullivan, judge of the criminal court of Cook county, and the trial was had on November 18 and 19, 1929, resulting in the conviction of plaintiffs in error. After the jury had been chosen and sworn and some testimony taken, counsel for plaintiffs in error sought to make proof of what occurred on the hearing before Judge Taylor at the time a mis-trial was declared. On objection by the State's attorney the court excused the jury, and counsel for plaintiffs in error stated that they offered to prove that the defendants in this case were placed on trial on the same indictment; that a jury was selected and sworn to try the issues and the State examined several witnesses, and that during the cross-examination of one of them the court, without fault of any of the defendants, on motion of the State's attorney, withdrew a juror and discharged the jury from further consideration of the case. The State's attorney thereupon stated that he wished the record to show that during the trial before Judge Taylor one of the jurors was asked if he knew anyone connected with the State's attorney's office,

and that he said he knew George Carmichael; that after the jury was sworn and impaneled, and during the course of the trial, said George Carmichael, formerly an assistant State's attorney, entered the court room, approached Pericles Caloedas, one of the defendants, slapped him on the back, shook hands with him and turned and looked at this juror and waved at him; that the court was at that time fully cognizant of what had occurred and was of the opinion that an injustice would be done to the State if the trial continued; that counsel were asked if they had any objections to a new trial and a juror being withdrawn and new trial recorded, and that counsel for defendants said he was willing to allow that. Counsel for plaintiffs in error's reply to this offer of the State's attorney declared that counsel for defendants did not consent to the withdrawal of a juror. The court ruled that as what actually occurred before Judge Taylor would be disclosed by the transcript, and if the case went up for review that matter could be reviewed at the same time, it sustained objection to the proof. Counsel for plaintiffs in error here says that the only question arising on the claim of former jeopardy is whether Judge Sullivan erred in refusing to permit proof of what happened before Judge Taylor, so that the jury might decide whether there had been former jeopardy.

It appears from the record that subsequent to the time of the hearing before Judge Taylor the cause came on again on March 27, 1929, before Hon. Otto Kerner on a plea of former jeopardy filed by each of the plaintiffs in error, to which pleas a replication was filed by the State's attorney setting out what occurred in the court room before Judge Taylor, and attached to that replication as an exhibit is a transcript of the proceedings before Judge Taylor, which sets out his statement that he saw George Carmichael, a lawyer and former assistant State's attorney, come into the court room to speak to defendant Caloedas, tap him on the shoulder and greet him, and then looked

at the juror Kadaldi, who had stated he knew Carmichael, said something to him, made a salutation or motion of recognition with a touch of a smile on his face, and that the court was therefore required to withdraw a juror. No denial of this replication was filed by counsel for plaintiffs in error on the hearing before Judge Kerner on plea of former jeopardy and a motion to discharge the defendants. The motion was overruled and the plea was not sustained. Exceptions were noted and a bill of exceptions requested. Ninety days were given to prepare and file the same but it apparently was not filed.

Counsel for plaintiffs in error here, who was not counsel in the court below, objects that the proceedings before Judge Taylor and Judge Kerner are not properly a part of the record in this case, and that he included them in the bill of exceptions and abstract only because the State's attorney refused to sign the bill of exceptions without them. The indictment and the parties in the proceedings before Judge Taylor were the same as are here and those proceedings are a part of the proceedings in this case. The rule in this State is that pleas of former jeopardy are not now proper, since under our statute the defense of former jeopardy may be made under a plea of not guilty, (*Hankins* v. *People,* 106 Ill. 628,) and the plea before Judge Kerner has no proper place in the record.

Counsel for plaintiffs in error argues that since a defendant is not required to file a plea of former jeopardy but may make proof of such former jeopardy under a plea of not guilty, it was competent to prove what occurred before Judge Taylor, so that the jury before Judge Sullivan might decide whether there had been former jeopardy. Under the condition of this record former jeopardy was purely a question of law. Under the defenses of *autrefois acquit,* *autrefois convict* and former jeopardy, where a question of identity of the crime or identity of the defendant exists it is proper to submit to the jury such questions as matters

of fact. (*Hankins* v. *People, supra; People* v. *Corbishly,* 327 Ill. 312; *People* v. *Hawkinson,* 324 id. 285; *People* v. *Brady,* 272 id. 401.) Here, however, there is no question of the identity of the crime or of the parties. Whether the proceedings before Judge Taylor showed former jeopardy is a question of law. No question of fact is involved. Questions of law in criminal cases are for the court and not for the jury. (*People* v. *Bruner,* 343 Ill. 146.) There was therefore in this case no question of former jeopardy to go to the jury.

Counsel for plaintiffs in error argues that where a record shows that the defendant was put upon trial and the jury was sworn to try the cause, the subsequent discharge of the jury before verdict entitles the defendant to be discharged unless the record also shows a lawful reason for such discharge of the jury. This is not the rule. It has long been recognized by this court and elsewhere that a court of justice is invested with the authority to discharge a jury from giving any verdict whenever in the court's opinion there is manifest necessity for such act or the ends of public justice would otherwise be defeated, and that such is within the discretion of the trial court and is not subject to review in the absence of abuse of discretion. (*People* v. *Peplos,* 340 Ill. 27; *Dreyer* v. *People,* 188 id. 40; *United States* v. *Perez,* 9 Wheat. 579; *Simmons* v. *United States,* 142 U. S. 148; *State* v. *Bell,* 81 N. C. 591; *People* v. *Diamond,* 231 Mich. 484; 8 R. C. L. p. 156.) The fact that a juror was withdrawn and a mis-trial declared is not of itself sufficient to indicate jeopardy, since a court of review will not presume an abuse of discretion on the part of the trial court. Therefore the proof offered by plaintiffs in error before Judge Sullivan was not sufficient to show former jeopardy had such proof been made, and for that further reason it was not error to deny the offer.

It seems equally clear that had plaintiffs in error, before Judge Taylor, moved to be discharged from custody, and

preserved for review here an adverse ruling on such motion or had preserved a bill of exceptions on the rulings made, they could have had the benefit of a review of such rulings on error as matters of law though not of fact. This was not done.

Plaintiffs in error have not been subjected to double jeopardy, and their first contention cannot be sustained.

It is next argued that other crimes were proved or insinuated. It appears from the evidence of Dorothy Fletcher, a witness for the People, that in April, 1928, plaintiff in error Caloedas went to her home and asked her to testify in a personal injury suit instituted against the elevated lines by one of his friends. He stated that they needed another witness, as they did not have sufficient evidence to prove their case, and asked her to go with him to their lawyer; that some days later he called for her and took her in a cab to the office of his lawyer, who the record shows knew nothing of a conspiracy to suborn perjury, and there met one Paul Sofias and Mike Bournazious. Sofias told Dorothy Fletcher he had been hurt in an accident and would like for her to say that she was with him at that time, that she had given him her name and that he wished her to testify. At Sofias' suggestion Dorothy Fletcher went with them to the scene of the alleged accident at the Grand avenue station, where Sofias, Bournazious and Simos explained the alleged accident to her. Sofias stated that he had been in an accident while sitting in the front seat of the first car, and that he wanted Dorothy Fletcher to testify she was there with him and that Mike Bournazious was near them, sitting on a side seat. She testified that subsequent to this occurrence, on September 20, 1928, the defendant Caloedas went to Dorothy Fletcher's home and told her that the case was coming up the first of the next week and she would have to be down-town the next morning; that she met Caloedas and went with him to the office of his lawyer, where she met the other plaintiffs in error,

Mike Simos and Anthony Anton. She told them that this was not the same man she had seen before, and Caloedas replied, "No, this is another case—another accident." Dorothy Fletcher further testified that Anton told her that he had been in an accident on May 6, 1927, at VanBuren and Franklin Elevated station, and that she was to testify in that case. He told her that two cars had collided; that two men were on the train and a little man was badly hurt; that Anton was also a witness and was going to testify to helping the little man, who was Simos, who was supposed to have been injured; that she told them she would have to know more about the accident, and they went to the Franklin and VanBuren station, where she conferred with them; that Caloedas told her that he wanted her to say that she was standing on the platform at the time of the alleged accident; that the two trains collided; that she saw one man getting off carrying an injured man up the platform; that one man was badly hurt; that one man was carrying a smaller man; that she had talked to the man who was hurt and that it was Mike Simos. She testified that after they had visited the railway station they went back to the attorney's office, and that Caloedas told her not to say anything to the attorney about his having asked her to testify. She testified she told the attorney she did not understand exactly about the case, so the attorney took her over to Franklin street, accompanied by the plaintiffs in error; that Caloedas again explained the accident to her, giving the reason that Simos could not tell her exactly in English about the accident; that they later again met at the office of the attorney and she went over her testimony with the plaintiffs in error; that on Wednesday, September 26, 1928, she appeared in the circuit court of Cook county before Hon. Craig Hood, judge of that court, as a witness in the civil case brought by Mike Simos against the Chicago Rapid Transit Company for alleged injury sustained in a train collision on May 6, 1927, at the Van-

Buren and Franklin street station, where she testified that she had seen the accident and had talked to defendant Anton and given him her card and had been subpœnaed. She also testified in the case at bar that she had never been at the Franklin street station prior to the time the plaintiffs in error took her there, and that she did not witness an accident on May 6, 1927, and had not seen Anton carrying Simos up the platform.

The motorman and conductor of one of the trains which were in the collision near VanBuren and Franklin streets on May 6, 1927, testified for the People in this case. The motorman, John J. Fitzgerald, testified that immediately after the accident he got out of his cab and went into the body of the first car; that he did not see Mike Simos nor Anton in the first car nor did he see them going up the platform. Albert Wendt, the conductor, testified that he saw neither defendant Simos nor Anton on the train and did not see Anton carrying Simos on the platform nor see anyone carrying any person up the platform. Witness Robert Baraglia also testified that he was on the platform at the time of the collision and that he did not see Dorothy Fletcher on the platform.

Plaintiff in error Simos testified in his own defense that he was in the first car of the Humboldt Park train involved in the collision on May 6, 1927, and that Anton was there and helped him out of the train after the accident; that he went to the Ashland Boulevard Hospital and remained there for almost two months. He admitted on cross-examination that after the accident he walked from the first car back to the second, where he saw Anton but did not see the conductor; that he said he was hurt, and Anton helped him to the platform. Plaintiff in error Caloedas testified denying that he had asked Dorothy Fletcher to testify to anything that she had not seen. On cross-examination he admitted that he had been securing damage suits and referring them to lawyers for the past ten

years; that these cases were against the street car company; that he had a case pending at the time of the trial against the Chicago Rapid Transit Company; that he knew both Sofias and Bournazious and that they both had claims against the Chicago Rapid Transit Company and the Northwestern railroad. Anton testified denying that he sought to have Dorothy Fletcher testify to anything she had not seen. He also testified that he was in the car at the time of the collision and helped Simos up the platform.

The testimony which counsel for plaintiffs in error here argues is proof of other distinct crimes was that of Dorothy Fletcher, in which she told of the first arrangement she had with Caloedas to testify to an injury to Paul Sofias at the Grand Avenue Elevated railway station. The ground of the objection is that this is proof of an entirely different and separate offense. It is also argued that the cross-examination of Caloedas in which he was asked if he had not been procuring personal injury cases against the street car company which he referred to lawyers was prejudicial. The charge in this case is conspiracy to suborn perjury. It is competent, when the issue is whether the accused is guilty of a conspiracy to do an illegal act, to prove distinct overt acts in any way connected with the conspiracy charged. It is not competent to prove a specified overt act wholly disconnected from, independent of and having no relevancy to the act charged in the indictment. (*McDonald* v. *People*, 126 Ill. 150.) Where the offense with which the accused is charged was perpetrated by trick, fraud or system of acts or representations, proof of antecedent acts or transactions is competent to show ·criminal intent or guilty knowledge, the reason being that proof of a series of acts bearing close similarity to and connected with each other, and each showing an intention similar to that charged in the indictment, is competent to prove such intent in the act charged. (*DuBois* v. *People*, 200 Ill. 157; *Williamson* v. *United States*, 207 U. S. 425.) In this case the two overt

acts of conspiracy were so closely allied that the witness Dorothy Fletcher did not know until she had met plaintiffs in error Simos and Anton that the case in which she did testify was not the same case concerning which Caloedas had first talked to her. We are of the opinion that the testimony was competent. While the cross-examination of Caloedas concerning his activities in securing damage suits and referring them to lawyers was not material to the issue, we are of the opinion that it did not give rise to an error requiring a reversal of this judgment.

The third assignment of error is that the proof does not sustain the verdict. The argument in support of this assignment is, that the proof rests solely on the uncorroborated testimony of Dorothy Fletcher, an accomplice, and that, as is frequently recognized by this court, the rule is that the testimony of an accomplice should be carefully scrutinized. There is, however, other evidence in this record tending to corroborate her statement. The testimony of the conductor and motorman of one of the trains in the collision, to the effect that they did not see plaintiffs in error at the time of this injury and did not see any person carrying another person up the platform, is a substantial corroboration of the testimony of Dorothy Fletcher. It is a matter of common knowledge that it is the business of these men to know and see who are injured in case of a collision. The fact that they did not see anyone carried up the platform is, under the circumstances there existing, substantial evidence that no such person was carried up the platform. The question of fact in this case was for the jury, and we are of the opinion that we would not be justified in disturbing the verdict returned by them.

There is no error in the record justifying reversal, and the judgment will be affirmed. *Judgment affirmed.*