(No. 34859.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* MACK THOMAS, Plaintiff in Error.

*Opinion filed November 26, 1958—Rehearing denied Jan. 22, 1959.*

GERALD W. GETTY, of Chicago, (JAMES J. DOHERTY, of counsel,) for plaintiff in error.

LATHAM CASTLE, Attorney General, of Springfield, and BENJAMIN S. ADAMOWSKI, State's Attorney, of Chicago, (FRED G. LEACH, LOUIS B. SUNDERLAND, FRANCIS X. RILEY, and JOHN J. STAMOS, of counsel,) for the People.

Mr. JUSTICE SCHAEFER delivered the opinion of the court:

A jury in the criminal court of Cook County found the defendant, Mack Thomas, guilty of selling narcotics, and he was sentenced to a term of not less than five nor more than ten years in the penitentiary. On this writ of error he contends that he was twice put in jeopardy for the same offense, and that his rights under section 10 of article II of the Illinois constitution and under the fourteenth amendment to the constitution of the United States were thereby violated.

About two weeks before the trial at which the defendant was convicted, he had been placed on trial upon the same indictment in the same court, but before a different judge and jury. Before the prosecution's first witness had concluded his testimony, a juror was withdrawn and a mistrial was declared. At the second trial the defendant's motion to dismiss on the ground of former jeopardy was denied. The only question before us is the correctness of this ruling, and the answer to that question turns upon an

appraisal of the circumstances under which the mistrial was declared.

At the first trial the prosecution's first witness, Shamery Williams, had testified that the defendant had sold narcotics to him on the date mentioned in the indictment. On cross-examination he had reluctantly testified that he was a narcotics addict and that he had previously served one term in the penitentiary for unlawful possession of narcotics, and another term for an offense that he chose not to describe. He had testified that he had dispensed narcotics to a girl and to another man, apparently shortly before he was arrested with the defendant, Mack Thomas. He had also testified that he did not know how he got out of jail, although he "guessed" that he had been released on bond. He then said, "A man cannot be sure about anything until it is all over." The following then occurred:

"Mr. Doherty: [Defense counsel] Q. Now, about 4:15 yesterday, I approached you, did I not, and asked you to tell me what you were going to testify to?

A. You did.

Q. And didn't I introduce you to an investigator from the Public Defender's office?

Mr. Kallick: [Assistant State's Attorney] Objection.

The Court: The objection will be sustained.

The Witness: I told you whatever I wanted to say I would say on the witness stand.

The Court: The objection will be sustained. Both remarks will be stricken. It is not incumbent upon any witness to talk to the Public Defender or anybody else.

Mr. Doherty: I am aware of that, if the Court please.

The Court: That is so that it should not create any impression.

Mr. Doherty: I am not trying to create any impression, I am trying to defend a man.

Q. Didn't you tell me the reason that you would not talk to me was because you did not want to get mixed up between the two stories?

Mr. Riordan: [Assistant State's Attorney] Objection.

The Court: The jury is instructed to disregard the statement. It has nothing whatsoever to do with the issues in this case and is purely a manufactured and synthetic emotional appeal.

Mr. Doherty: As an officer of this Court, are you accusing me of manufacturing something, your Honor? I will take exception.

The Court: Objection sustained. You are instructed not to pursue that line of interrogation."

Thereafter counsel for the defendant, out of the presence of the jury, offered to prove that in the presence of an investigator from the public defender's office the witness assigned as his reason for refusing to talk to defense counsel the fact that he did not want to get mixed up in the two stories—"between what he tells me now and what he expects to testify tomorrow on the witness stand." The court denied the offer of proof, saying: "I will tell you right now that if you attempt to prove that kind of stuff in this courtroom, it will be denied; and if you want to make a motion, I will declare a mistrial and I will direct the Public Defender not to send you to my courtroom again. * * * The offer of proof will be denied. If you want a mistrial?—

"Mr. Kallick: In view of his statements, your Honor, I believe that your statement about a mistrial might be well taken.

The Court: All right, a mistrial will be declared."

There is no question but that the defendant had been placed in jeopardy upon the first trial. (*O'Donnell* v. *People,* 224 Ill. 218; *People* v. *Watson,* 394 Ill. 177.) It does not, however, follow automatically that his constitutional

rights were violated by the second trial. Under a wide variety of circumstances the discharge of a jury after the trial has commenced has been held not to give rise to a claim of double jeopardy. (See cases cited, *Himmelfarb* v. *United States*, (C.A. 9) 175 F.2d 924.) The varying circumstances that will justify a mistrial without giving rise to double jeopardy have frequently been generalized in the expression that a court has authority to discharge a jury "whenever in the court's opinion there is manifest necessity for such act or the ends of public justice would otherwise be defeated, * * *." (*People* v. *Touhy*, 361 Ill. 332, 344; *People* v. *Simos*, 345 Ill. 226, 231; *People* v. *Peplos*, 340 Ill. 27.) These decisions hold also that the ruling of the trial court is not subject to review in the absence of an abuse of discretion.

The defendant points to the fact that the mistrial was ordered upon the motion of the prosecution, and he argues that the record discloses no reason for it. It is true that the mistrial may have been declared because the trial judge felt that the attempt to impeach the witness by showing his prior statement was improper and that it so prejudiced the jury that the prosecution could not receive a fair trial. If that was the basis of the ruling it would be of dubious validity. Williams was an important witness, and enough had been brought to light to warrant a searching inquiry into his credibility. (Cf. *People* v. *Crump*, 5 Ill.2d 251; *People* v. *Maggio*, 324 Ill. 516.) The method of impeachment here attempted was a familiar one. See Cleary, Handbook of Illinois Evidence, sec. 3.15; Wigmore on Evidence, 3rd ed., secs. 1020-1022.

It is unnecessary, however, for us to determine the propriety of the mistrial on the assumption that it was granted to protect the prosecution from unfairness. The record shows another basis for the action taken that in our opinion is sound. (Cf. *Campbell* v. *Powers*, 139 Ill. 128, 135.) In the presence of the jury the trial judge had

charged the defendant's attorney with attempting "a manufactured and synthetic emotional appeal." The charge was a serious one that would almost inevitably have prejudiced the defendant in the eyes of the jury. Judgments of conviction following verdict of guilty have been reversed for similar, and perhaps less damaging, statements. *People* v. *Riggins,* 8 Ill.2d 78, 85; *People* v. *Coli,* 2 Ill.2d 186, 189; *People* v. *Marino,* 414 Ill. 445, 450.

The trial judge was thus confronted with a situation in which his own unstudied remarks in ruling on a question of evidence had probably infected the record with a fatal error. If the trial continued and there was a verdict of guilty, it would, in all likelihood, have been set aside upon a motion for a new trial or reversed upon appeal. In either event no question of double jeopardy would have arisen upon the retrial. (*People* v. *Woodward,* 394 Ill. 433.) The question, then, is whether the constitutional guaranty against double jeopardy compelled the judge to conclude the trial and receive the verdict of the jury before taking action to cure the error.

In our opinion the purpose behind the double jeopardy clause does not indicate that it should be given such expanded scope. That purpose is "that the State with all of its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty." *Green* v. *United States,* 355 U.S. 184, 2 L. ed. 2d 199.

The ends of justice can hardly be said to be served by requiring that a trial be continued to its conclusion after an inadvertent error by the trial judge has sharply minimized the possibility of sustaining a verdict for the prosecution. (Cf. American Law Institute, Model Penal Code, Tent. Draft No. 5, sec. 1.09.) Concepts of impartial jus-

tice and scrupulous fairness to a defendant do not include an opportunity to speculate upon the chance of a favorable verdict when, as in this case, a legal defect has substantially eliminated the chance of an unfavorable one. Different considerations might well come into play if the defect had been caused by the prosecution in an effort to secure an unfair advantage. Under the circumstances of this case, however, we hold that the trial court correctly decided that the defendant was not placed in double jeopardy. What has been said also disposes of the defendant's claim that he was deprived of due process under the fourteenth amendment. See *Palko* v. *Connecticut,* 302 U.S. 319, 82 L. ed. 288.

*Judgment affirmed.*