(No. 42843.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant,
v. EDGAR CHAFFIN, Appellee.

*Opinion filed September 30, 1971.*

GOLDENHERSH, J., dissenting.

WILLIAM L. SCOTT, Attorney General, of Springfield, and EDWARD V. HANRAHAN, State's Attorney, of Chicago, (JAMES B. ZAGEL, Assistant Attorney General, and ROBERT A. NOVELLE and JAMES S. VELDMAN, Assistant State's Attorneys, of counsel,) for the People.

COGHLAN & JOYCE, of Chicago, (JAMES L. COGHLAN and WILLIAM J. NELLIS, of counsel,) for appellee.

MR. JUSTICE KLUCZYNSKI delivered the opinion of the court:

Defendant, Edgar Chaffin, was indicted for the murder of Thomas Westbrook and his trial by jury commenced in the circuit court of Cook County. During the proceedings the State moved for a mistrial which was allowed over defendant's objection. When the case was called for retrial, defendant filed a plea of *autrefois acquit* and former jeopardy, which was allowed. The State appealed and the appellate court affirmed. (115 Ill.App.2d 1.) We granted leave to appeal.

The testimony of the State's witnesses indicated that in the early morning of February 25, 1967, the defendant was driving two men, James Slajchert and Donald Gardner, home from work. Chaffin told them that Westbrook had cheated him and that he was going to get even, displayed a gun and said he intended to kill Westbrook. As they passed a restaurant Slajchert saw two girls he knew and asked Chaffin to turn around and go back. Chaffin went back and parked in the alley behind the restaurant. Slajchert went into the restaurant, saw Westbrook and returned to

the car to tell Chaffin. Chaffin told Slajchert to send Westbrook out on the pretense that he would pay him some money he owed him. Slajchert returned to the restaurant and gave the message. Westbrook left while Slajchert remained inside. As Westbrook approached the automobile, Chaffin pulled his gun and shot him three times. Chaffin and Gardner pulled away but Gardner, who had met Chaffin and Slajchert for the first time that night, got out of the car a short distance away. Westbrook staggered back into the restaurant and collapsed on the floor. Police officers arrived in a few minutes and spoke to him briefly. Then they approached Slajchert who was sitting in a booth and took him into custody. Westbrook was taken to a hospital where he died two days later.

Both Chaffin and Slajchert were indicted for the murder. Chaffin's attorney moved to suppress all statements made by deceased subsequent to the shooting. He also requested an order directing the State not to offer in evidence the statement made by deceased at the hospital, or to refer to either statement during trial. Because neither statement qualified as a dying declaration, the State did not object and the motion was allowed. In his opening statement the prosecutor informed the jurors that Slajchert and Gardner would testify for the State and that neither would be prosecuted. Defense counsel, in his opening statement, informed the jury that Chaffin did not shoot Westbrook, and further stated: "I am not saying that Gardner is the one who shot the deceased, I do not know. I believe the evidence will disclose that this boy (Chaffin) did not and that Gardner knows who did ***."

Both Gardner and Slajchert testified for the State. It was after the following cross-examination of Slajchert that the State moved for a mistrial:

> "DEFENSE COUNSEL: Officer Pizza came into that restaurant and he had a conversation with Thomas Westbrook, did he not?
> WITNESS: I don't remember.

DEFENSE COUNSEL: And then he came over to the table and said 'Where is Slajchert' or 'Who is Slajchert', did he not?

WITNESS: I don't remember whether it was asked by Sergeant Pizza or not. I think it was another officer.

DEFENSE COUNSEL: A police officer came up to the table and said 'Where is Slajchert' did he not?

WITNESS: He said, 'Who is Slajchert?'

DEFENSE COUNSEL: 'Who is Slajchert' and you identified yourself then for the first time, is that right?

WITNESS: Yes."

In the *in camera* proceedings which followed this cross-examination, the prosecutor moved for a mistrial. After a lengthy discussion by the prosecution, defense and the trial judge, the court granted a mistrial.

The basic issues before this court are: (1) whether it was error to grant a mistrial, and (2) if not, whether the State must assume responsibility for the mistrial. The State contends that a mistrial was necessary because of the improper questioning by defense counsel. The defendant argues that declaring a mistrial was an abuse of discretion and to try the defendant again would violate the double jeopardy prohibition in section 10 of article II of the constitution of Illinois and the fifth amendment to the constitution of the United States.

During the *in camera* discussion, the trial judge made a substantial effort to resolve the difficulty and avoid a mistrial. The judge agreed with the prosecution that an inference would be drawn by the jury from the cross-examination that Slajchert shot Westbrook. He commented: "Under these circumstances it looks like he (Westbrook) said, 'There is the guy that did it, Slajchert'." The court urged that both counsel agree on a solution which would rebut the reference. Defense counsel offered to

allow the following into evidence: that the police came into the restaurant and asked deceased "What happened?" and he replied, "Ask Slajchert," and that they then went over to the booth where Slajchert was sitting and asked "Who is Slajchert?" and Slajchert replied, "I am." This was unacceptable to the prosecutor because he felt that this left with the jury the same inference that Slajchert did the shooting. Both prosecution and defense were aware at this time that if Officer Pizza's testimony concerning the deceased's statement in the restaurant was offered, it would indicate that deceased stated, "Chaffin shot me, ask Slajchert about it." The prosecutor argued that because defense counsel had made reference to the conversation between deceased and the police officer and inferred that Slajchert had been accused, the only way to remove the inference was to admit into evidence the written statement of deceased at the hospital. When the court was about to declare a mistrial, defense counsel agreed to stipulate that Slajchert did not shoot the victim. The prosecutor would not agree to this stipulation because he felt that it would not remove the harm. Later defense counsel stated that he would stipulate to anything that was said by the deceased in the restaurant.

The appellate court agreed with the trial judge that the "State's case was greatly damaged through no fault of its own," but found that "after the defense had made its proposals there no longer was a manifest necessity for a mistrial. If either proposal had been accepted the unjust inference would have been eliminated and the harm to the State's case undone." 115 Ill.App.2d at 6, 8. We cannot agree.

One solution suggested by defense counsel was to stipulate that Slajchert did not shoot deceased. This was unacceptable to the prosecutor because in itself it would not remove the harm which had already been done. We agree that once there was a reference to the conversation, even a stipulation that Slajchert did not shoot Westbrook

would not cure the error. With the stipulation the jury is given the impression that a conversation with the deceased took place after the shooting and that the deceased did not specifically accuse Chaffin. This inaccurate impression would, of course, affect the credibility of the testimony of Gardner and Slajchert.

The other solution suggested by defense counsel was to admit in evidence testimony concerning deceased's oral statement at the restaurant. However, such testimony would indicate that deceased said "Chaffin shot me" and would be so prejudicial to the defendant's case that if defense counsel allowed it to be admitted in evidence there would be a serious question about the adequacy of his representation. Thus the trial judge was properly concerned about any statement by deceased which would directly accuse the defendant. "Concepts of impartial justice and scrupulous fairness to a defendant do not include an opportunity to speculate upon the chance of a favorable verdict when, as in this case, a legal defect has substantially eliminated the chance of an unfavorable one." *(People v. Thomas, 15 Ill.2d 344, at 349-350.)* Admission of this evidence which was properly excluded before trial would have allowed defense counsel to speculate on a favorable verdict, knowing that if there was a guilty verdict, there was a strong probability that there would be a new trial.

We agree with the appellate court that any reference to the conversation was unfair and unnecessary because defense counsel, having suppressed deceased's oral statement, "not only knew that Westbrook had accused Chaffin of shooting him but also knew that the State would be unable to refute the inaccurate inference which could be drawn from his questions. They were unnecessary because their only legitimate probative value was to show that Slajchert remained silent until accosted by the police. This could have been done without referring to the conversation between Westbrook and the police or by asking

Slajchert questions which carried no accusatory imputation." 115 Ill.App.2d at 6.

In *Gori v. United States, 367 U.S. 364, 6 L.Ed.2d 901, 81 S.Ct. 1523,* the court commented: "Where, for reasons deemed compelling by the trial judge, who is best situated intelligently to make such a decision, the ends of substantial justice cannot be attained without discontinuing the trial, a mistrial may be declared without the defendant's consent and even over his objection, and he may be retried consistently with the Fifth amendment."' (367 U.S. at 368; see also: *Brock v. North Carolina, 44 U.S. 424, 97 L.Ed. 456, 73 S.Ct. 349; Wade v. Hunter, 336 U.S. 684, 93 L.Ed. 974, 69 S.Ct. 834; Thompson v. United States, 155 U.S. 271, 39 L.Ed. 146.)* In Illinois, we have for a long time recognized the principle that "a court of justice is invested with the authority to discharge a jury from giving any verdict whenever in the court's opinion there is manifest necessity for such act or the ends of public justice would otherwise be defeated, and that such is within the discretion of the trial court and is not subject to review in the absence of abuse of discretion." *People v. Simos, 345 Ill. 226, at 231.* See also: *People v. Laws (1963), 29 Ill.2d 221; People v. Thomas (1958), 15 Ill.2d 344.*

Considering the circumstancs surrounding the trial after reference had been made to the conversation between deceased and the police and its impact on the jury, we cannot say that granting a mistrial in this situation was an abuse of discretion by the trial court. Because the mistrial was necessitated by the cross-examination of Slajchert by defense counsel, defendant may be retried.

We agree with the appellate court's disposition of the State's other complaint concerning the propriety of the cross-examination of its witnesses.

For the foregoing reasons, the judgment of the appellate court is reversed and the cause remanded.

*Reversed and remanded.*

MR. JUSTICE GOLDENHERSH, dissenting:

I respectfully dissent from the majority opinion and would affirm the judgments of the circuit and appellate court. The majority states that "once there was a reference to the conversation even a stipulation that Slajchert did not shoot Westbrook would not cure the error." What error? The opinion does not state what the error was, and the record shows that the State did not object to the cross-examination.

It cannot be seriously contended that it was error to show that the police officer spoke with Westbrook and then went to the table and spoke with Slajchert. The fact that the jury might draw an unfavorable inference from these facts is one of the hazards of our adversary system of the trial of cases. There are countless decisions of this and the appellate courts holding that evidence admissible for one purpose is not rendered inadmissible because the jury might improperly consider it in some other capacity for which it could not properly be admitted. A party aggrieved by its admission can and should offer an instruction limiting the inferences which may be drawn therefrom.

I will concede that having succeeded in suppressing the deceased's oral statement, defense counsel, in the exercise of fairness and complete candor should have called some other witness to show what the police officer did, but the conduct is not so reprehensible as to require the result achieved by the majority's opinion.

This record reflects that the State's "star" witnesses Gardner and Slajchert had been discredited, perhaps beyond rehabilitation. The allowance of the motion for mistrial, based on cross-examination to which no objection was made, literally "aborted" the proceeding (see *United States v. Jorn, 400 U.S. 470, 27 L.Ed.2d 543, 91 S.Ct. 547)* and improperly deprived the defendant of "his valued right to have his trial completed by a particular tribunal *** ." Wade v. Hunter, 336 U.S. 684, 689, 93 L.Ed. 974, 69 S.Ct. 834, 837.*

I disagree that defense counsel was in a position to "speculate on a favorable verdict ***" and I fail to perceive the basis for the "strong possibility" that admission of the evidence to which he offered to stipulate would result in a new trial. I am not aware of any opinion of this court which granted a new trial because of evidence admitted in accordance with the stipulation of able experienced trial counsel, obvisously entered into as a matter of trial strategy. I further point out that an examination of this record would quickly allay any question of the adequacy of the defendant's representation. In my opinion the effect of our decision is to deprive this defendant of a valued fifth amendment right.