NOTICE
Decision filed 09/19/25. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2025 IL App (5th) 240017-U

NO. 5-24-0017

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE
This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Wabash County. |
| | ) | |
| v. | ) | No. 22-CF-31 |
| | ) | |
| JOHN W. DARDEEN, | ) | Honorable |
| | ) | William C. Hudson, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

PRESIDING JUSTICE McHANEY delivered the judgment of the court.
Justices Moore and Boie concurred in the judgment.

**ORDER**

¶ 1    *Held*:    Where the trial court did not abuse its discretion by denying a cause challenge to a juror who was partially deaf in one ear, and did not abuse its discretion by denying the defendant's motion for a mistrial, we affirm the defendant's conviction.

¶ 2    On March 17, 2022, the defendant, John Dardeen, was charged by information with unlawful delivery of methamphetamine (720 ILCS 646/55(a)(1) (West 2020)). On February 8, 2023, following a jury trial, he was found guilty and sentenced to seven years in the Illinois Department of Corrections (IDOC). This appeal followed.

¶ 3                                  I. Background

¶ 4    The State charged that on July 7, 2021, and October 5, 2021, the defendant sold 1.2 grams and 1.4 grams, respectively, of methamphetamine to confidential informant (CI), Jonathan Hughes (Hughes). Both transactions were video and audio recorded. The State elected to combine the

1

separate sales into one charge. One week before trial, defense counsel filed a written discovery motion requesting:

> "arrest logs, incident reports, and all other documentation showing the use of Jonathan Hughes as a confidential source *** [and] a copy of all written contracts and/or a copy of all written contracts and/or oral agreements between Illinois State Police, Wabash County Police Department, or Wabash County Sheriff's Office (including all employees therein) and the confidential sources in this cause."

The State informed defense counsel that Hughes had received $100 for his cooperation on the two dates charged in the information. The State also advised there were no oral or written agreements between Hughes and the Illinois State Police (ISP) that could be produced. The defendant's jury trial commenced on February 6, 2023.

¶ 5    During jury selection, defense counsel asked prospective jurors: "Will anyone have a hard time seeing or hearing a video that's being played here?" Juror number 3, William Johnson (Johnson), responded that he was "partially deaf *** [in] one side." Responding to further questioning by defense counsel, Johnson confirmed that his deafness was not "100 percent." Johnson never said that he would be unable to hear testimony or a video recording.

¶ 6    During the jury selection conference, defense counsel asked that Johnson be excused "for cause" because of his hearing issue. The State objected, responding:

> "[I]t's a physical impairment. I do believe there will be videos and audios shown. I note that we have a TV present in the courtroom that's hooked up to a sound bar, which I've practiced with, which can reach a pretty loud volume. I believe that Mr. Johnson was pretty vocal during the jury selection process. He wasn't afraid to

answer questions. To me it is certainly a physical impartment that we can accommodate and that we would accommodate."

¶ 7 The trial court denied defense counsel's motion to excuse Johnson for cause, stating: "Mr. Johnson [never] said he would not be able to serve. And he said it was a partial in only one side." Because defense counsel had used all of his peremptory challenges, Johnson was empaneled.

¶ 8 The following relevant evidence was adduced at trial. ISP Master Sergeant Anthony Johnson testified that he was part of an investigation into the sale of methamphetamine in Wabash County, Illinois, in 2021. Sergeant Johnson testified that the investigation involved the defendant and was conducted using Hughes as a CI. Hughes arranged to purchase an unspecified amount of methamphetamine from the defendant. On July 7, 2021, Hughes was "completely searched for anything, anything contraband related, any other money, any other weapons or drugs," and while under surveillance by several law enforcement agents, he purchased from the defendant 1.2 grams of methamphetamine with pre-recorded money provided by ISP. The process was repeated on October 5, 2021, when Hughes purchased 1.4 grams of methamphetamine from the defendant. Both transactions were audio and video recorded using an "overhear device," and these recordings were admitted into evidence and published to the jury.

¶ 9 On cross-examination, Sergeant Johnson testified about the types of documents confidential informants usually sign, noting that he was not the original handler of Hughes as a CI. Sergeant Johnson said he never had a copy of any agreement with Hughes, and he believed Hughes agreed to be a CI in this case in exchange for leniency on some pending charges in Indiana.

¶ 10 Following this testimony, outside the presence of the jury, defense counsel moved for a mistrial, asserting that any agreement between Hughes and Indiana authorities, which could potentially go to Hughes's credibility, was not provided in discovery. The State responded that

after the discovery request, authorities in Indiana were contacted, and it was confirmed that no written agreement existed regarding Hughes's charges there. Further, the State explained that the document defense counsel requested from Sergeant Johnson is not a contract or agreement, but a signed document outlining the general rules of being a CI. Although the State could not produce the original document that was signed by Hughes, it did provide defense counsel with an unsigned copy of the identical form. Finally, the State reiterated that defense counsel had been informed, on more than one occasion before trial, of the $100 payment to Hughes for each controlled buy in this case.

¶ 11     The trial court denied the motion for a mistrial, stating:

"The Court will note that Ms. Blades was appointed on March 22, 2022. On August 23, 2022, a final pretrial conference was scheduled for January 17, 2023, at 9:30 and a jury trial for February 6, 2023, at 9:00 a.m. Those dates were confirmed on October 25, 2022. Those dates were again confirmed on December 13, 2022. Those dates were confirmed on January 17, 2023.

And then a motion for discovery was filed by the defense on January 31 of 2023, which would be less than one week prior to trial. The Court is not aware why after a jury trial was set back in August of 2022 counsel decided to wait until January 31 to file a motion for discovery.

But it sounds like that motion for discovery was substantially complied with and that any agreement that the State believed should have been provided was provided, as well as disclosures about the amounts of money paid to the confidential source."

4

¶ 12    The trial resumed, and the State called Hasnain Hamayat, a forensic scientist for the ISP Crime Laboratory. Hamayat testified that both samples submitted by Sergeant Johnson in this case were in fact methamphetamine, weighing 1.2 grams and 1.4 grams, respectively.

¶ 13    Jonathan Hughes testified that he was a CI for ISP in 2021. He said the defendant was his stepfather's cousin, and he had known him for 30 years. Hughes stated that on both July 7, 2021, and October 5, 2021, he was searched by Sergeant Johnson, was given $200, and he purchased methamphetamine from the defendant for $100 on each occasion. Hughes said he wore an audio and video recording device during these transactions, and he gave the methamphetamine to Sergeant Johnson immediately after the purchase, along with the remaining $100. When asked how he became a CI, at first Hughes stated that Sergeant Johnson was his "handler" the entire time he worked with ISP but later said that he may have initially signed up and spoke with a different investigator once or twice. When asked if he knew what his sentence could be if convicted in Indiana, he responded, "I'm sure jail time, prison time." Hughes stated that he believed his agreement with Indiana law enforcement was "to make three buys on three different targets" and that would earn him a deferral from facing any charges in Indiana or it would "lighten [his] sentence." Hughes acknowledged he had conducted other transactions outside of this case and the case in Indiana, but he said that the two buys involving the defendant, where he received $100 each time, were the full extent of his paid cooperation as an informant for ISP.

¶ 14    The defendant testified on his own behalf. He stated he was in the military for about 18 years and "got out in '02 or something like that." He tried methamphetamine in high school but he did not "like it." He stated, "I sell weed. I've sold weed since I've been out of the service. I mean, I sold it out in California. I come back here, and I sell it. *** I sell weed, and that's what he bought." When cross-examined, the defendant admitted that it was his house depicted on the video,

5

and it was him on the video with Hughes. While discussing the video, the following colloquy occurred between the State and the defendant:

"Q. Is there some ability that John Hughes has that I'm not aware of where he can turn a quarter of weed into a gram of methamphetamine?

A. How well was the search because I didn't see no search.

Q. Is there a method or not that he can do that?

A. Well, if I sell him weed and he's got meth on him, sure. If you seen by my grill there, he could have put weed there. I don't know. I know what I sold him. I know what I sold him. I sold him weed. That was it.

Q. Did you find weed in your grill after July 7, 2021?

A. Well, no.

* * *

Q. Do you refer to an eighth of weed as a ball ever?

A. Yeah, all the time.

Q. Can ball also refer to an eighth of methamphetamine?

A. Cocaine, anything. If it weighed three-and-a-half grams, that's an eighth.

Q. Do you recall saying to [Hughes] as he's leaving make you a ball for about a buck fifty?

A. Uh-huh.

Q. You testified earlier that an eighth of weed is $50. Why you telling him in the video that an eighth is a buck fifty?

6

A. Because I get weed from Colorado. And I get it from California. California is ten times better than Colorado. And I charge more. The better the weed, the higher the price.

Q. You told me earlier it was cheaper than that. But now you're saying you have better weed and it's more expensive? You told me earlier that an eighth was $50?

A. Right.

\* \* \*

Q. Again, you're saying that you would sell him an eight later for a buck fifty?

A. Right.

Q. And then Hughes responds, well, can you sell me half of one or—do you remember him saying that?

A. Sure.

Q. And you responded I can sell you a gram. I can sell you a gram-and-a-half for $100.

A. Right.

Q. So here you're saying you're selling him a gram-and-a-half of weed for $100?

A. Right.

Q. When earlier, according to your eighth for a $50, that would be $25?

A. Right, right.

Q. So are you ripping him off on the weed?

7

A. No. They don't—they don't have to buy. I sell weed. That's what I do.

I sell weed."

¶ 15 At the conclusion of the trial, the jury found the defendant guilty of unlawful delivery of methamphetamine. He subsequently agreed to a negotiated sentence of 7 years in IDOC, concurrent to an 11-year sentence he received in exchange for a plea of guilty to possession of methamphetamine with intent to deliver in a separate case. No posttrial motions were filed, and the defendant timely appealed.

¶ 16                                    II. Analysis

¶ 17 The defendant raises two issues on appeal. First, he contends that the trial court erred by not granting defense counsel's request to excuse juror Johnson for cause. Second, he argues that the trial court erred by refusing to grant defense counsel's request for a mistrial based upon the State's failure to disclose potentially exculpatory evidence in violation of *Brady v. Maryland*, 373 U.S. 83 (1963).

¶ 18 Because the defendant failed to file a posttrial motion, these issues are forfeited. "To preserve a purported error for consideration by a reviewing court, a defendant must object to the error at trial and raise the error in a posttrial motion." *People v. Sebby*, 2017 IL 119445, ¶ 48. "Failure to do either results in forfeiture." *Id.* The defendant seeks to avoid forfeiture by arguing that his contention of error can be reviewed as second prong plain error. Alternatively, the defendant argues that trial counsel was ineffective for failing to raise and preserve these issues in a posttrial motion.

¶ 19 Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the trial court. Ill. S. Ct. R. 615(a) (eff. Jan. 1, 1967). The plain-error doctrine permits a reviewing court to consider an unpreserved error if either (1) the evidence is so

8

closely balanced that the error threatened to tip the scales of justice against the defendant (*i.e.*, the jury's guilty verdict may have resulted from the error and not the evidence), or (2) the error is so serious that it affected the defendant's substantial rights, and thus denied him a fair trial. *Sebby*, 2017 IL 119445, ¶ 48; *People v. Jackson*, 2022 IL 127256, ¶ 19. Under either prong, the burden of persuasion remains with the defendant. *People v. Rodriguez*, 2014 IL App (2d) 130148, ¶ 73. "The first step in plain error review is to determine whether a clear or obvious error occurred." *People v. Finlaw*, 2023 IL App (4th) 220797, ¶ 47.

¶ 20    The defendant first argues that allowing a partially deaf juror, Johnson, to serve on the jury without an appropriate accommodation was a due process violation, relying on section 8-1402 of the Code of Civil Procedure (735 ILCS 5/8-1402 (West 2000)). Denial of a challenge to an individual juror will be reviewed for an abuse of discretion. *People v. Jones*, 369 Ill. App. 3d 452, 455 (2006). An abuse of discretion will be found if it is determined that the conduct of the court thwarted the selection of an impartial jury. *People v. Metcalfe*, 202 Ill. 2d 544, 555-56 (2002). Section 8-1402 provides: "Whenever any *deaf* person is a party to any legal proceeding of any nature, or a juror or witness therein, the court in all instances shall appoint a qualified interpreter of the deaf sign-language to interpret the proceedings to and the testimony of such deaf person *** so that a qualified individual with a hearing disability may participate as a party, witness, juror, or spectator in any legal proceeding." (Emphasis added.) 735 ILCS 5/8-1402 (West 2000). The Americans with Disabilities Act of 1990 (ADA) clarifies that "[t]he type of auxiliary aid or service necessary to ensure effective communication will vary in accordance with the method of communication used by the individual; the nature, length, and complexity of the communication involved; and the context in which the communication is taking place. In determining what types

9

of auxiliary aids and services are necessary, a public entity shall give primary consideration to the requests of individuals with disabilities." 28 C.F.R. § 35.160(b)(2) (2000).

¶ 21    Here, during jury selection, when defense counsel stated that a video would be shown during the trial, Johnson volunteered that he was "partially deaf" in one ear. In response to defense counsel's cause challenge of Johnson, the State then offered to use a sound bar to increase the volume of the audio from the video. The State noted that Johnson was "pretty vocal" during jury selection and "wasn't afraid to answer questions." The trial court noted that Johnson never said he would "not be able to serve, and he said it was partial in only one side."

¶ 22    There is nothing in the record to support the conclusion that Johnson was "deaf," thereby obviating the need for a sign language interpreter, as required by 8-1402 of the Code. Further, in accordance with the ADA, the State and the trial court offered an accommodation, a sound bar, which would increase the volume of any video. There is nothing in the record to indicate that Johnson was unable to hear any testimony, including the video recordings. We find that the trial court's decision to deny the defendant's motion to excuse Johnson for cause was not an abuse of discretion. Because the trial court's decision to deny the defendant's cause challenge was not error, there can be no plain error. Accordingly, the defendant's request for plain error review of this unpreserved claim fails. *Finlaw*, 2023 IL App (4th) 220797, ¶ 47. Because there was no error, the defendant's claim of ineffective assistance of counsel also fails.

¶ 23    The defendant next argues that his motion for mistrial should have been granted because, in violation of *Brady* and Illinois Supreme Court Rule 412 (eff. Mar. 1, 2001), the State suppressed evidence, *i.e.*, that Hughes had a written agreement with ISP and had been paid on other occasions to perform other controlled buys. A mistrial should only be granted " '[w]here, for reasons deemed compelling by the trial judge, who is best situated intelligently to make such a decision, the ends

of substantial justice cannot be attained without discontinuing the trial.' " *People v. Chaffin*, 49 Ill. 2d 356, 362 (1971) (quoting *Gori v. United States*, 367 U.S. 364, 368 (1961)). "The trial court's evaluation of whether this threshold has been reached is reviewed only for abuse of discretion [citation], and must be afforded the highest degree of respect, as the trial court is far more conversant with the factors relevant to the determination than any reviewing court can possibly be." (Internal quotation marks omitted.) *People v. Segoviano*, 189 Ill. 2d 228, 241 (2000).

¶ 24    In *Brady*, the United States Supreme Court held that "suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady*, 373 U.S. at 87. "[E]vidence is material 'if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.' " *Strickler v. Greene*, 527 U.S. 263, 280 (1999) (quoting *United States v. Bagley*, 473 U.S. 667, 682 (1985)).

¶ 25    Rule 412 provides in relevant part:

"[T]he State shall, upon written motion of defense counsel, disclose to defense counsel the following material and information *within its possession or control*:

***

(c) Except as is otherwise provided in these rules as to protective orders, the State shall disclose to defense counsel any material or information within its possession or control which tends to negate the guilt of the accused as to the offense charged or which would tend to reduce his punishment therefor. The State shall make a good-faith effort to specifically identify by description or otherwise any

11

material disclosed pursuant to this section based upon the information available to the State at the time the material is disclosed to the defense. \*\*\*

\* \* \*

(g) Upon defense counsel's request and designation of material or information which would be discoverable if in the possession or control of the State, and which is in the possession or control of other governmental personnel, the State shall use diligent good-faith efforts to cause such material to be made available to defense counsel; and if the State's efforts are unsuccessful and such material or other governmental personnel are subject to the jurisdiction of the court, the court shall issue suitable subpoenas or orders to cause such material to be made available to defense counsel." (Emphasis added.) Ill. S. Ct. R. 412(a), (c), (g) (eff. Mar. 1, 2001).

Less than one week before trial, defense counsel filed a motion for discovery seeking *inter alia:* arrest logs, incidental reports, and all other documentation showing the use of Hughes as a CI; any other cases where Hughes was used as a CI; and all written and oral agreements between Hughes and ISP, Wabash Police Department, and Wabash Sheriff's Office. The defendant argues that because he was not provided with the requested information, the State violated Rule 412(a), which was also *Brady* violation. In order to support a *Brady* violation, the defendant must establish that the State withheld favorable evidence. See *Brady*, 373 U.S. at 87. The record clearly establishes that the State disclosed all information *in its possession* requested by the defense. The defendant's claim that the State failed to provide a written contract between ISP and Hughes ignores the fact that no such contract exists. The only written document between ISP and Hughes was the standard form signed by all CIs regarding the rules to follow. The State was not in possession of the original

12

rule form signed by Hughes but did provide defense counsel with a copy of the identical form. The defendant's contention that the State withheld a written agreement between Indiana authorities and Hughes is equally flawed. The State contacted Indiana authorities, attempting to procure any written agreement they had entered into with Hughes, and was advised that no such written agreement existed. The State cannot violate *Brady* by failing to provide the defense with requested documentation that does not exist.

¶ 26    The defendant's trial strategy was that he sold Hughes marijuana, not methamphetamine. According to the defendant, Hughes used sleight of hand to exchange the marijuana he purchased from the defendant into the methamphetamine discovered by Sergeant Johnson during his search of Hughes immediately following both buys. This strategy was completely dependent upon defense counsel's ability to attack Hughes's credibility. The defendant has failed to identify any evidence or documentation allegedly withheld by the State that prevented trial counsel from eliciting testimony from Hughes that he was a paid informant and expected to get leniency or dismissal of his Indiana charges. Based upon our review of the entire record, we conclude that the trial court's decision to deny defense counsel's motion for a mistrial was not an abuse of discretion. Accordingly, the defendant's request for plain error review of this unpreserved claim fails. *Finlaw*, 2023 IL App (4th) 220797, ¶ 47. Because there was no error, the defendant's claim of ineffective assistance of counsel also fails.

¶ 27                                      III. Conclusion

¶ 28    For the foregoing reasons, we affirm the defendant's conviction.


¶ 29    Affirmed.